IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EDWARD P. MONROE,

    Plaintiff,

v.                                                              Civil Action No. 5:04CV26
                                                                                           (STAMP)

ELMO GREER & SONS OF KENTUCKY, LLC,
a foreign limited liability company
f/k/a Elmo Greer & Sons, Inc.,
a foreign corporation,

    Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I. <u>Procedural History</u>

On February 4, 2004, the plaintiff, Edward P. Monroe, filed a civil action in the Circuit Court of Ohio County, West Virginia alleging claims of breach of contract (Count I) and fraud, misrepresentation, and outrageous conduct (Count II) against the defendant. On March 4, 2004, the defendant removed the action to this Court pursuant to 28 U.S.C. § 1332, alleging that diversity of citizenship exists and the amount in controversy exceeds $75,000.00.

The plaintiff filed a motion for partial summary judgment in this action, to which the defendant responded and the plaintiff replied. The defendant also filed a motion for summary judgment, to which the plaintiff responded and the defendant replied. These dispositive motions are now fully briefed and ripe for review.

After considering the parties' memoranda and the applicable law, this Court finds that the defendant's motion for summary judgment should be granted in part and denied in part, and the plaintiff's motion for partial summary judgment should be denied.

## II. Facts

The plaintiff is the owner of two parcels of real property located in Ohio County, West Virginia: a thirty-acre parcel located off of Stone & Shannon Road ("Stone & Shannon property") and a thirty-acre parcel located off of West Virginia State Route 2 near the Pike Island Dam ("Pike Island property"). In his complaint, the plaintiff alleges that on June 10, 1999, he entered into a contract with the defendant that allowed the defendant to place dirt, rocks, and other materials related to its West Virginia State Route 2 construction work on the plaintiff's two properties in exchange for monetary compensation.[1] The contract stated that the defendant should pay the plaintiff in four installments in the amount of twenty-five percent of the estimated volume of fill –– the first at the commencement of the work; the second when the work was approximately one-quarter complete; the third when the work was one-half complete; and the fourth at the time of final acceptance and reconciliation of the volume of fill placed on the plaintiff's

---

[1] The contract entitled the plaintiff to receive 40 cents per square yard for fill deposited on the Pike Island property, and 35 cents per square yard for fill placed on the Stone & Shannon property. Compl. ¶ 5.

properties. The plaintiff asserts that the defendant breached this contract by: (1) failing to provide full and timely compensation; (2) storing equipment and conducting activities on the plaintiff's property that were not included in the contract, without the plaintiff's permission and without providing compensation. He further asserts that the defendant made willful, intentional, malicious and fraudulent representations regarding the nature and timing of the compensation the plaintiff was entitled to receive under the contract. The plaintiff asserts that the defendant intentionally "withheld timely payments to said property owners, including plaintiff, in order to make additional monies for itself." Compl. ¶ 8. The plaintiff seeks appropriate compensation for the defendant's actions on the property, as well as damages for deprivation of use of the property, annoyance, inconvenience, aggravation, and attorney's fees and expenses. In Count III of the complaint, the plaintiff seeks punitive damages.

### III. Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Id. at 256.  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV. Discussion

A. Plaintiff's Motion for Partial Summary Judgment

The plaintiff asserts that no genuine issue of material fact exists with respect to Count I (Breach of Contract) and Count II (Fraud, Misrepresentations, and/or Outrageous Conduct), and that he is entitled to judgment as a matter of law. The plaintiff claims that there is no dispute that the defendant breached the contract by failing to compensate him pursuant to the schedule in the contract. He argues that, after receiving an initial payment on September 7, 1999, the defendant filled his Pike Island property by seventy-five percent without making another payment. Further, he claims that the defendant completed the work on his properties by October 2000, but did not provide him with a final payment until July 23, 2001.

In addition, the plaintiff asserts that the defendant breached the contract by failing to pay the contractual rate for additional fill placed on his Stone & Shannon property. The plaintiff asserts that the parties reached an agreement in which the defendant would fill a 300-foot hollow on the plaintiff's Stone & Shannon property without providing the plaintiff with compensation. However, the plaintiff asserts that, after filling the 300-foot hollow, the defendant placed an additional 134,600 cubic yards of fill on the property without compensating the plaintiff.

Further, he asserts that the defendant breached the contract by failing to pay hauling ("wheelage") fees for the fill transported across his Stone & Shannon property, and for the wheelage of stone, fuel and dynamite across his Pike Island property without his permission. The plaintiff argues that the failure of the defendant to specifically mention these items in the contract creates an ambiguity that must be construed against the defendant.

With respect to Count II, the plaintiff argues that the defendant, by its agent Gary Taylor ("Taylor"), perpetrated an ongoing fraud against him by misrepresenting material facts in order to avoid paying the plaintiff amounts due to him under the contract. Specifically, the plaintiff argues that Taylor: (1) promised that the amounts due and owing pursuant to the contract would be paid in the near future; (2) misrepresented that the

6

defendant could not make payments until the State of West Virginia approved the work; (3) misrepresented that the plaintiff had been fully compensated for all of the fill placed on his property; and (4) misrepresented that the defendant would only haul fill across the Pike Island property. He claims that Taylor's actions were part of the defendant's ongoing fraudulent scheme to delay payments of the monies due under the contract in order to make additional monies for itself.

In response, the defendant first argues that the plaintiff is relying on evidence outside of the record to support his summary judgment motion. The defendant contends that the deposition testimony of Gary Taylor and Robert Ackerson ("Ackerson") offered by the plaintiff was taken during previous litigation involving different plaintiffs. The defendant objects to this evidence as irrelevant and outside of the scope of admissibility for summary judgment purposes.

Next, the defendant contends that the issue of whether the defendant paid the plaintiff within a reasonable time is a question for a jury. Further, the defendant asserts that the plaintiff is not entitled to summary judgment on his breach of contract claim regarding the placement of additional fill on his Stone & Shannon property. The defendant claims that the parties' agreement that the defendant would fill a 300-foot hollow on that property was formed outside of the original contract. The defendant argues that

7

a genuine issue of material fact remains as to the existence and terms of this separate contract, and therefore, the plaintiff cannot receive summary judgment on this issue.

In addition, the defendant asserts that genuine issues of material fact exist with respect to the plaintiff's claim that he was entitled to payment for the hauling of fill across his Stone & Shannon property and for the hauling of dynamite, fuel, and oil across the Pike Island property. The defendant argues that these matters were not addressed in the original contract, and thus, the plaintiff again must prove the existence and terms of any agreement as to these issues. The defendant further contends that the plaintiff insisted on wheelage only with respect to his Pike Island property, and not his Stone & Shannon property. The defendant also asserts that no evidence exists that the parties entered into a contract in which the plaintiff was entitled to be compensated for the transporting of any equipment or other materials across either of his properties.

Further, the defendant argues that the plaintiff was not an unsophisticated participant in the contract negotiations. The defendant asserts that the plaintiff actively negotiated the terms of his contract, requesting to be paid wheelage and different amounts for fill on the two parcels, and requesting that a payment schedule be included in the contract. The defendant argues that the plaintiff negotiated several of the terms included in the

contract, and could have negotiated terms for wheelage on the Stone & Shannon property or wheelage for other materials being hauled across his property if he so desired. The defendant argues that the absence of a discussion of these issues in the contract does not create an ambiguity -- rather, it places the burden on the plaintiff to prove that there was some agreement as to these issues.

Finally, the defendant argues that the plaintiff has not provided a sufficient basis to recover under a separate tort claim because his causes of action arise solely out of the contract at issue. The defendant contends that the damages the plaintiff seeks as a result of the fraud and misrepresentation are identical to those he cites in his breach of contract claim. The defendant asserts that the plaintiff has not demonstrated that he relied to his detriment on statements by the defendant or that there was additional damage which must be compensated in tort. Thus, the defendant argues that Count II must fail. Further, the defendant argues that genuine issues of material fact exist regarding the alleged misrepresentations made by the defendant, and, consequently, the plaintiff's motion for summary judgment as to this issue must be denied.

In reply, the plaintiff argues that the prior testimony of Taylor and Ackerson is admissible for the purposes of this summary judgment motion because the case for which the testimony was taken

9

shows the "common characteristics and the proximity in time in which these misrepresentations occurred . . ." Pl.'s Reply at 4.

Upon review of the record, this Court finds that the plaintiff's motion for partial summary judgment must be denied. First, this Court finds that a factual dispute exists as to whether the defendant made payment to the plaintiff within a "reasonable time" pursuant to the schedule in the contract. This Court finds that reasonable minds could differ as to the appropriateness of the timing based on the facts presented in the record to date. Thus, this is an issue of fact that is more appropriately decided by a jury. See, e.g., Haug v. Gersten Constr. Co., 289 F.2d 616, 619 (4th Cir. 1961).

Further, this Court finds that plaintiff has failed to demonstrate conclusively that the defendant breached a contract by placing additional fill on the plaintiff's Stone & Shannon property. As noted by the defendant, the alleged agreement regarding the filling of the 300-foot hollow appears to be an addition or amendment to the original contract, and the plaintiff has not provided any evidence regarding the circumstances in which this agreement was made or the terms and scope of the agreement. Thus, this Court finds that a genuine issue of material fact remains as to whether a new contract was created and whether the defendant's alleged actions were outside of the scope of that contract.

This Court also finds that genuine issues of material fact remain as to whether the defendant's failure to compensate the plaintiff for hauling fill across his Stone & Shannon property and for hauling dynamite, fuel, and oil across his Pike Island property was in breach of the contract. As noted by the defendant, the contract is silent as to these issues. Further, factual disputes remain regarding the parties' actions and expectations when negotiating the contract. Consequently, determinations regarding the nature and scope of the contract must be resolved by a jury, rather than as a matter of law.

With respect to Count II, this Court must initially conclude that the deposition testimony of Taylor and Ackerson from a previous civil action[2] is admissible in support of the plaintiff's motion. It is well-established that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." St. Louis Baptist Temple v. Federal Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979). Further, the United States Court of Appeals for the Fifth Circuit has held that "[a]lthough Rule 56 does not expressly contemplate the use of such evidence in granting summary judgment, we find no error in relying on such evidence." Kelley v.

---

[2] This deposition testimony was taken as a part of Klein v. Elmo Greer & Sons of Kentucky, Civil Action No. 02-C-26, in the Circuit Court of Ohio County, West Virginia.

Price-Macemon, Inc., 992 F.2d 1408, 1415 (5th Cir. 1993). Thus, this Court will consider the prior deposition testimony in support of the plaintiff's motion.

Even after considering this disputed testimony, this Court cannot conclude that the plaintiff is entitled to summary judgment on Count II. This Court will address this issue further in the discussions that follow regarding the defendant's motion for summary judgment. However, this Court finds that the plaintiff has failed to prove that he is entitled to summary judgment with respect to Counts I and II.

B.  Defendant's Motion for Summary Judgment

The defendant has submitted what is essentially a cross-motion for summary judgment. The defendant argues that the allegations made in Paragraph 17 of Count I must be dismissed because the plaintiff has produced no evidence that his property was used for the storage of equipment and/or dynamite, or for rock crushing.

The defendant further asserts that the tort claims stated in Count II must fail because the allegations stem from the parties' contractual relationship. The defendant contends that the gravamen of the plaintiff's complaint is breach of contract, and that "[p]laintiffs' tort claims derive from duties and obligations imposed by mutual agreement." Def.'s Mot. Summ. J. at 3. Thus, the defendant argues that Count II should be dismissed with prejudice.

Finally, the defendant asserts that the plaintiff's claim for punitive damages must fail because this form of compensation is unavailable in pure contract actions. The defendant again notes that the plaintiff's tort claims must fail, but asserts that, even if this Court finds them viable, the claim for punitive damages lacks merit. The defendant argues that the plaintiff has not provided any evidence of wrongful actions of the defendant other than failure to provide payment in a timely manner. The defendant asserts that this cannot support a claim of willful and wanton conduct that is sufficient for punitive damages to be awarded.

In response, the plaintiff concedes that parts of Paragraph 17 should be dismissed; specifically, the allegations that the defendant stored equipment, including dynamite, on property and that the defendant used his property for a rock crushing operation. However, the plaintiff notes that Paragraph 17 contains additional viable allegations against the defendant, including the unauthorized wheelage of dynamite, fuel, and oil over the Pike Island property, the unauthorized hauling of fill over the Stone & Shannon property, and the additional fill placed on the Stone & Shannon property. The plaintiff argues that these allegations should stand.

In addition, the plaintiff asserts that his tort claims are viable. He contends that there are separate and distinct damages available for claims arising from fraudulent misrepresentations

13

that occur during the performance of a contract. He argues that the present case includes claims both for breach of contract and for separate torts committed during the performance of the contract. He also asserts that he has suffered separate damages for annoyance, inconvenience, and attorney's fees.

Finally, the plaintiff contends that his claim for punitive damages survives because the defendant's acts of fraud and misrepresentation were sufficiently willful, wanton, reckless, and malicious to warrant such damages.

Upon review, this Court first notes that, as previously discussed, genuine issues of material fact exist with respect to the plaintiff's breach of contract claim, with the exception of those issues conceded by the plaintiff in his response to the defendant's motion for summary judgment; i.e., the allegations that the defendant stored equipment, including dynamite, on the plaintiff's property and that the defendant used the plaintiff's property for a rock crushing operation. The defendant's motion for summary judgment is, therefore, granted in part as to those two issues and denied as to the rest of the allegations in Count I.

This Court will next consider the viability of Count II –- the plaintiff's tort claims of fraud, misrepresentation, and outrageous conduct. The defendant argues that the plaintiff's tort claims must fail on two grounds: (1) the alleged fraudulent actions arise solely out of the contract in this case; and (2) the alleged

14

statements were merely promissory in nature, or were unfulfilled predictions or expectations about payment, and are not alone sufficient to constitute fraud. This Court will consider each of these arguments in turn.

The plaintiff's tort claims stem from his allegation that the defendant perpetrated an intentional, fraudulent scheme to avoid paying him the monies due pursuant to the contract. The Supreme Court of Appeals of West Virginia has stated:

> Tort liability of the parties to a contract arises from the breach of some <u>positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation</u>. An action in tort will not arise for breach of contract unless the action in tort <u>would arise independent of the existence of the contract</u>.

<u>Lockhart v. Airco Heating & Cooling</u>, 211 W. Va. 609, 614 (2002)(emphasis added). This Court interprets <u>Lockhart</u> to stand for the proposition that a separate tort claim can go forward only if it would be viable in the absence of a contract between the parties. In this case, the plaintiff would not be able to allege a claim in tort in the absence of the contract. There is no independent legal duty of payment imposed by law based upon the relationship between the plaintiff and the defendant. The fraudulent scheme alleged by the plaintiff stems directly from the defendant's alleged omission to perform a contract obligation, and not from any independent duty it held to the plaintiff or the public at large.

Further, this Court notes that the primary case cited by the plaintiff in support of its position, Muzelak v. King Chevrolet, Inc., 179 W. Va. 340 (1988), can easily be distinguished from the facts of this case. In Muzelak, the plaintiff's claim of fraud/misrepresentation arose from a statutory duty imposed on the defendant by law -- the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101 to -110. The plaintiff has cited no such legal duty in this case.

In addition, this Court finds that the predictions or unfulfilled promises alleged by the plaintiff do not create actionable fraud. The Supreme Court of Appeals of West Virginia has held that "an expression of intention or opinion will not serve as the predicate of fraud unless the party claiming fraud shows the non-existence of the intention to fulfill the promise or predicted act at the time the promise or predicted act was made." Croston v. Emax Oil Co., 195 W. Va. 86, 90 (1995). The plaintiff has not made such a showing in this case. The evidence presented by the plaintiff -- the deposition testimony of Taylor and Ackerson during the Klein case -- does not provide any evidence of the defendant's intentions at the time the statements regarding payment were made to the plaintiff. It merely addresses the traditional contractual language and schedules of payment used by the defendant. In the absence of any evidence regarding intent, this Court cannot consider the alleged statements made by Taylor to be actionable

fraud. Thus, given the above findings, summary judgment in favor of the defendant is appropriate as to Count II.

Finally, this Court notes that "[g]enerally, absent an independent, intentional tort committed by the defendant, punitive damages are not available in an action for breach of contract." Berry v. Nationwide Mut. Fire Ins. Co., 181 W. Va. 168, 175 (1989). Because this Court has found that the plaintiff's independent tort claims are not viable, the plaintiff's punitive damages claim also must fail. Accordingly, the defendant's motion for summary judgment as to Count III must also be granted.

## V. Conclusion

Because the defendant has set forth sufficient evidence to demonstrate to this Court that there is an absence of a genuine issue of material fact with respect to Count I in part, Count II, and Count III, this Court, pursuant to Rule 56(e), the defendant's motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART. Further, the plaintiff's motion for partial summary judgment is hereby DENIED. This action will go forward only with respect to the plaintiff's claim of breach of contract as to timeliness of payment, placement of additional fill on the plaintiff's Stone & Shannon property, unauthorized wheelage of dynamite, fuel, and oil over the plaintiff's Pike Island property, and unauthorized hauling of fill over the plaintiff's Stone & Shannon property.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: April 27, 2005

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE